UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MICHAEL J. SONGER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Cause No. 1:09-cv-1355-WTL-TAB |
| MICHAEL J. ASTRUE, | ) |  |
| Defendant. | ) |  |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michael J. Songer seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## PROCEDURAL HISTORY

Songer filed his application in April 2006 alleging disability beginning on April 26, 2003, due to reflex sympathetic dystrophy ("RSD") in his left hand, degenerative disc disease, depression, anxiety, bilateral carpal tunnel syndrome, crepitus and atrophy of the left shoulder, crepitus of the left knee, chronic hip pain, and history of facial injury, status-post facial reconstruction. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an ALJ. On August 6, 2007, a hearing was held before ALJ James Gildea, at which Songer and vocational expert Bob Hammond testified. ALJ Gildea rendered an unfavorable decision on August 27, 2007; however, this decision was vacated by the Appeals Council, which remanded the case for additional vocational expert testimony and,

if appropriate, updated medical records. A second hearing was held by ALJ David Thompson on December 4, 2008, at which Songer and vocational expert Bonnie Gladden testified. Songer was represented by counsel at both hearings. In a decision dated December 30, 2008, ALJ Thompson denied Songer's application for benefits. After the Appeals Council denied review of the ALJ's decision on July 17, 2009, Songer filed this timely appeal.

## MEDICAL EVIDENCE

Songer was born in May 1955. He is a high school graduate. His past relevant work experience includes construction worker, heavy equipment operator, and carpenter.

Songer injured his left wrist in an accident in April, 2003, which resulted in damage to his left median nerve. Songer also suffers from degenerative disc disease along with neck and low back pain. In addition, Songer has been treated for depression and anxiety.

In May 2003, Songer had surgery on his left hand to treat the left median nerve damage and carpal tunnel syndrome. Since the surgery, Songer has consistently reported pain, numbness, sensitivity to touch, and loss of strength in his left hand. His long-time primary care physician, Dr. Furr, has diagnosed Songer as suffering from RSD and prescribed hydrocodone, Xanax, and other medications to treat his symptoms.

On February 17, 2004, Songer was treated at an emergency room after attempting suicide.

On May 4, 2004, Songer presented at an emergency room complaining of intense pain in his left palm. He was diagnosed with neuropathy of the left hand. A radiology report of his hand showed there was a density to the fifth metacarpal phalangeal joint space and a possible radiopaque foreign body.

On April 13, 2005, Songer sought treatment for pain and swelling in both wrists after he fell off a scaffold while attempting to repair his roof. He was prescribed Celebrex, Vicodin and a

2

wrist splint.

In June of 2005, Songer underwent a consultative examination at the request of the state disability agency. The evaluation was completed by Dr. Shuyan Wang. Dr. Wang's examination revealed that Songer had mild tenderness in the right wrist, significant tenderness in the left wrist, and left hand atrophy. She noted that Songer was able to pick up coins, button clothes and use a zipper with his right hand, but not his left hand. Based on her examination, Dr. Wang diagnosed Songer with "possible RSD" and determined that his left hand was "basically non-functioning" and his left upper extremity was "markedly decreased" for pushing, pulling, lifting and carrying. Dr. Wang opined that Songer could work eight hours a day in a seated or standing position with walking, but that his standing and walking time should be limited to less than 40 minutes each hour due to back and right hip pain. Dr. Wang believed that Songer could use his right upper extremity for lifting, pushing, or carrying five pounds frequently and ten pounds occasionally.

In June 2006, Songer underwent a second examination for the state agency, this time with Dr. Philip Budzenski. Songer reported pain and numbness in his left hand and refused to attempt range of motion and strength testing with that hand due to the pain. Dr. Budzenski opined that Songer was suffering from untreated neuropathy in his left arm. He noted hypersensitivity in his left hand, a tremor in his left thumb, and swelling in the left thenar eminence. He further noted:

> With regard to neuropathy, claimant notes that the pain and sensation is better with wrapping his hand. He notes that he is able to play his guitar. I did not ask him which hand he uses to strum the strings and which hand he is using to control the frets. He is noted to be right hand dominant. He is not on any medication for neuropathy.

Record at 355. Dr. Budzenski opined that Songer had full use of his right upper extremity for

3

pushing, pulling, grasping, and manipulating ten pounds continually and twenty pounds occasionally. He indicated that Songer had full use of his lower extremities and could operate foot controls, as long as he avoided excessive range of motion with his left knee. Dr. Budzenski stated that Songer should avoid crawling, climbing ladders, ropes or scaffolds and working around unprotected heights but that "[h]e should otherwise have no difficulty performing one-handed work." *Id.*

Also in June 2006, Songer underwent a mental status evaluation for the state agency. Psychologist Stanley Hogsett diagnosed Songer with chronic depressive disorder. Songer reported to Dr. Hogsett that "his interests include playing the guitar and playing pool but he cannot do this any longer due to the injury to his left hand." *Id.* at 359.

## **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two,

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains

4

if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## DISCUSSION

---

citations to DIB sections only.

ALJ Thompson found at step one that Songer had not engaged in substantial employment since his alleged onset date of April 26, 2003. At steps two and three, the ALJ concluded that Songer had the severe impairments of left wrist nerve damage and degenerative disc disease, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Songer retained the residual functional capacity ("RFC") to perform light work

> except he is unable to climb ladders, ropes, and scaffolding; he cannot climb ramps or stairs more than occasionally; he cannot crawl; he can occasionally balance, stoop, kneel, and crouch; he cannot be exposed to hazards; and he cannot perform reaching, handling, fingering, or feeling with the left, dominant upper extremity.

Record at 25. Given this RFC, the ALJ found that Songer was unable to return to any of his past relevant work. However, the ALJ concluded at step five that considering Songer's age, education, work experience and RFC, he was capable of performing a significant number of jobs in the national economy, including light duty security guard and surveillance system monitor. Therefore, the ALJ determined that Songer was not disabled.

Songer advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### *Failure to Evaluate RSD*

Songer argues that this case must be remanded because the ALJ failed to address the fact that he has been diagnosed with RSD and failed to evaluate the impact of RSD on his ability to work. Songer is correct. The record makes it clear that Songer has consistently complained of, and been treated for, pain in his left arm that began following trauma to that arm. His treating physician has determined that the cause of this pain is RSD, and there does not appear to be any evidence in the record that contradicts this determination. Yet the ALJ failed to address the issue

6

of whether Songer has RSD and, if so, how it affects his RFC.  *See* SSR 03-2P (2003)

(addressing the appropriate manner in which to evaluate RSD).  This case must be remanded to

permit that evaluation to occur.[2]

### *Evaluation of Depression*

Songer next takes issue with the ALJ's finding that he has no medically determinable

mental impairment.  The only discussion regarding Songer's psychological condition in the

ALJ's decision is the following paragraph:

> The claimant has, at times, shown symptoms of depression and anxiety, but these appear to be transitory in nature.  He has not been treated for a mental disorder.  His long-term attending physician, Dr. Joseph Furr, has not diagnosed the claimant with a mental disease and has not referred the claimant to a psychiatrist, psychologist, or other mental health professional.  The undersigned concludes that the claimant does not have a mental impairment that has significantly limited him from performing basic work activities for at least 12 months; the claimant does not have a medically determinable mental impairment.

Record at 24-25.  The ALJ wholly failed to acknowledge the fact that psychological consultative

examiner Hogsett diagnosed Songer with *chronic* depressive disorder.  Chronic is the opposite of

transitory.  "Although an ALJ need not discuss every piece of evidence in the record, the ALJ

---

[2]The Commissioner argues that remand is unnecessary because the ALJ did consider Songer's allegation of disabling left arm pain and determined that it was inconsistent with the objective medical evidence and Songer's ability to perform daily activities.  The Court notes that the ALJ's analysis may have been different had it considered the diagnosis of RSD, which is known to cause intense pain such as that alleged by Songer.  In addition, the Court notes that the ALJ seemed to place an inordinate amount of emphasis on Dr. Budzenski's comment that Songer could play his guitar in spite of his arm pain.  In light of the fact that the record contains numerous instances in which Songer notes that he had been a guitar player for many years but is now unable to play because of his pain, it seems highly unlikely that Songer reported otherwise to Dr. Budzenski.  The ALJ at least should have considered the possibility that Dr. Budzenski misunderstood or mis-remembered what Songer told him about playing the guitar, especially considering the fact that Dr. Budzenski also incorrectly stated in his report that Songer was right-handed and the fact that several doctors of record found that Songer's left hand was essentially useless.

7

may not ignore an entire line of evidence that is contrary to the ruling," *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009), and that is precisely what the ALJ with regard to the evidence regarding Songer's depression. This error shall be corrected on remand.

### *Step Five Determination*

Finally, Songer argues that the ALJ's step five determination is not supported by substantial evidence for two reasons.[3] First, he argues that the ALJ failed to consider whether Songer had transferable job skills that would enable him to perform the jobs identified at step five. However, the ALJ appropriately relied upon the testimony of the vocational expert on this issue, who explained that the jobs in question require no skills beyond those which a person with a high school diploma would have.

Second, Songer argues that ALJ erred by failing to ask the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles. Songer is correct that SSR 00-4p (2000) requires an ALJ to make such an inquiry so that any inconsistency can be addressed at the hearing. Perhaps, as the Commissioner suggests, the error was harmless in this case. It is unnecessary to make that determination, however; inasmuch as remand is necessary for other issues, the ALJ should correct this error as well.

### **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

---

[3]Songer also argues that the ALJ's step five determination did not take into account all of Songer's nonexertional limitations because, as discussed above, the ALJ failed to consider his RSD and mental impairments. Obviously the ALJ will need to revisit the step five determination if on remand he finds that additional impairments (whether severe or not) exist that (singly or in combination) affect Songer's RFC.

8

SO ORDERED: 03/09/2011

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification